**E-Filed 3/3/2009**

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| HOMETRONICS INC.,<br><br>        Plaintiff,<br><br>    v.<br><br>CECIL FRED REACER, ELECTRONIC ARCHI-TECHS, INC., ANDREA NOWAK, SHEILA REACER, and DOES 1 through 10, inclusive | Case Number C 08-01751 JF (HRL)<br><br>**ORDER[1] GRANTING IN PART MOTION FOR DEFAULT JUDGMENT**<br><br>[Re: Docket No. 22] |

Plaintiff HomeTronics, Inc. ("HT") moves for a default judgment jointly and severally against Defendants Cecil Fred Reacer ("Cecil"), Sheila Reacer ("Sheila") and Electronic Archi-Techs Inc. ("EA"). HT seeks damages in the amount of $723,000.00, plus pre- and post-judgment interest, attorneys' fees and costs in the amount of $28,285.85, and injunctive relief. At a hearing on February 6, 2009, the Court indicated that it would grant the motion in its entirety. However, upon further review of the record, the Court concludes that the facts do not support all of the damages and injunctive relief requested. Accordingly, for reasons discussed

---

[1] This disposition is not designated for publication in the official reports.

below, the motion will be granted in part and denied in part.

## I. BACKGROUND

HT is a Texas corporation that specializes in installing custom home theaters, audio/video, lighting, control and home automation systems.  It alleges that Defendants Cecil and Reacer[2] each own a significant interest in EA and serve as current officer and member of EA's Board of Directors.  HT alleges that EA, a Nevada corporation, also is a home theater and custom electronic design and installation service company.

On July 1, 2004, HT hired Cecil as HT's director of marketing.  The employment agreement included a sales representation agreement with EA.  Compensation originally was established at "9% Commission on all contracts and change orders on all sales excluding sales tax, meeting a 40% minimum profit margin."  The agreement also provided that "the first three months shall include a $6,000.00 per month guarantee paid bi-monthly . . . . The guarantee will be deducted from future earnings."

Between December 2000 and the present, HT has maintained a website to describe its services. The website contains professional photographs depicting installations performed by HT, awards and recognition received by HT as a result of those installations, HT's authorized affiliations with product suppliers and other background information.  The cost to produce the photographs was $750.  Pl. Statement of Monetary Damages, Attorneys Fees, and Costs ("Damage Statement") at 2.  During the period of its engagement with Cecil and EA, HT consented to the use of its proprietary content on Defendants' website.

On February 2, 2008, HT terminated Cecil for cause and revoked its consent for use of its proprietary content by EA.  On February 15, 2008, through its counsel, HT sent a letter demanding immediate removal of its proprietary content from Defendants' website.  On February 29, 2008, Defendants removed all of HT's proprietary content from their website.

On April 1, 2008, HT filed the instant action, alleging that Defendants used HT as a

---

[2]The complaint also listed Andrea Nowak as a defendant.  On August 28, 2008, the Court issued an order dismissing Andrea Nowak.

conduit to acquire installation contracts, and that Defendants thereafter completed some of those installations by themselves and falsely reported that such contracts were not viable for HT.  HT also alleges that Cecil ordered business cards under the name of HT for Sheila and Nowak, who never were HT employees.  Finally, HT claims that Defendants Cecil and Sheila charged personal expenses to HT's corporate credit card.

Cecil and Sheila were served with the summons and complaint on April 10, 2008.  EA was served with the summons and complaint on April 3, 2008.  None of the Defendants have appeared in this action or responded to the complaint within the time permitted by law.  On November 6, 2008, default was entered by the clerk.  *See* Docket No. 21.  On January 3, 2009, HT filed the instant motion for default judgment, seeking monetary damages for copyright infringement, prepaid and unearned commission, misappropriated travel expenses, conversion of its stock and tools, the unauthorized charges to its corporate credit card, and lost profits and royalties, totaling $723,000.00.[3]  HT also seeks pre- and post-judgment interest, as well as injunctive relief to prevent Defendants from using HT's copyrighted materials and trademark.  HT requests attorney's fees and costs in the amount of $28,285.85.

## II. DEFAULT JUDGMENT

Upon default, the well-pleaded allegations in a complaint are considered to be true and sufficient to establish a defendant's liability.  *DirecTV, Inc. v. Huynh*, 503 F.3d 847, 851 (9th Cir. 2007); *Kingvision Pay-Per-View, Ltd. v. Backman*, 102 F. Supp. 2d 1196, 1197 (N.D. Cal. 2000).  However, this rule does not apply to allegations in the complaint regarding damages.  *Backman*, 102 F. Supp. 2d at 1197.

**A. Copyright**

"In a case where the copyright owner sustains the burden of proving, and the court finds, that infringement was committed willfully, the court in its discretion may increase the award of

---

[3] The motion for default judgment also claims damages for trademark infringement in the amount of $13,200, trebled to $39,000.  See Pl. Mot. at 18:13-16.  However, including the trademark infringement would result in a damage award greater than the $723,000 requested in the motion.  The trademark infringement damages are not listed in HT's Damage Statement.

3

1   statutory damages to a sum of not more than $150,000." 17 U.S.C. § 504(c)(2). However, "[17
2   U.S.C. § 412(2)] mandates that, in order to recover statutory damages, the copyrighted work
3   *must have been registered prior to commencement of the infringement*, unless the registration
4   is made within three months after first publication of the work." *Derek Andrew, Inc. v. Poof*
5   *Apparel Corp.*, 528 F.3d 696, 699 (9th Cir. 2008) (emphasis added).

6       HT has opted to pursue statutory damages in the amount of $150,000.[4] Pl. Mot. at 15:1-3.
7   However, although it alleges that it held copyrights on various professional photographs, Pl.
8   Mot. at 4:21-23, HT has not pled or demonstrated that the photographs in fact were registered
9   prior to the alleged infringement or within three months after first publication of the photographs.
10  Under these circumstances, HT's request for statutory damages must be denied.

11      "The copyright owner is entitled to recover the actual damages suffered by him or her as a
12  result of the infringement, and any profits of the infringer that are attributable to the infringement
13  and are not taken into account in computing the actual damages." 17 U.S.C. § 504(b). HT has
14  not pled any actual damages suffered by it as the result of the infringement or the extent to which
15  any of the Defendants profited from the infringements. Accordingly, the Court will not award
16  actual damages for the copyright infringement. Because HT has alleged that the photographs
17  cost $750.00 to produce, the Court will award general damages in the amount of $750.00.

18  **B. Prepaid & Unearned Commissions**

19      HT also seeks $258,000.00 in prepaid and unearned commissions. HT arrived at that
20  amount by multiplying forty-three (43), the number of months Cecil was employed by HT, by
21  $6,000, the amount of commission paid to Cecil per month. This analysis is reasonable, and the
22  Court will award prepaid and unearned commissions in the amount of $258,000.00.

---

[4] HT's moving papers suggest multiple copyright infringements and an entitlement to multiple statutory damage awards, but only a single award is requested. The motion states, "[a]ccordingly, HT seeks damages for Defendants' violation of 17 U.S.C. § 504 of $150,000.00 (the maximum amount of damages permitted by statute) *per copyright infringed*. There were *several* copyrighted photographs that were reproduced by Defendants on their website and elsewhere." Pl. Mot. at 15: 1-4. (emphasis added)

**C. Lost Profits and Royalties**

HT seeks $258,000.00 in lost profits and royalties. HT arrived at this amount by inferring that Defendants performed 0.5 installation per month for 43 months at an average sale price of $30,000, and a gross margin of $12,000. The analysis and the final amount are reasonable. The Court will award lost profits and royalties in the amount of $258,000.00.

**D. Misappropriated Travel Expenses, Conversion of Plaintiff's materials, Personal Expenses on Corporate Card**

HT seeks $35,000 for misappropriated travel expenses, $15,000 for conversion of its tools and materials, and $7,000 for personal expenses charged to its corporate credit card. The Court will award the amounts requested by HT.

**E. Attorneys' Fees**

HT also seeks $26,205.00[5] in attorneys' fees and $2,080.85 in other litigation costs. These amounts are supported by declaration of HT's counsel, Marc E. Hankin. The Court will award attorneys' fees and costs in the amount of $28,285.85.

### III.  Injunctive Relief

HT requests injunctive relief, including "an injunction against Defendants from operating a website using a domain name intended to, or having the effect of, diverting traffic from HT's website, including but not limited to the site www.theelectronicarchitects.com or any other domain name confusingly similar to Plaintiff's Mark owned . . . ." Pl. Mot. at 17:21-24. "The core element of trademark infringement is whether the similarity of the marks is likely to confuse customers about the source of the products . . . ." *Nissan Motor Co. v. Nissan Computer Corp.*, 378 F.3d 1002, 1018 (9th Cir. 2004) (citing *Interstellar Starship Services, Ltd. V. Epix, Inc.*, 304 F.3d 936, 941 (9th Cir. 2002)). "To evaluate the likelihood of confusion [] in the context of the

---

[5] HT's moving papers state that HT has "incurred reasonable attorneys' fees and costs in prosecuting this action against Defendants of $26,885.85 plus, by virtue of this Motion, it will incur approximately an additional $1,400.00." Pl. Mot. at 21:1-3. However, the later filed Damage Statement lists the attorney fees (pre-motion) at $24,805.00 and an additional $1,400 for the motion hearing. The amount of $26,205 is calculated using the amount listed in the Damage Statement ($24,805 + $1,400 = $26,205).

internet, the three most important factors are the similarity of the marks, the relatedness of the goods or services, and the parties' simultaneous use of the internet in marketing." *Id*. at 1018-1019 (internal citations omitted).

The website www.theelectronicarchitects.com is not similar to HT's website www.hometronics.com. HT has not provided any facts or data indicating potential customers "accidentally" entering the site www.theeletronicarchitects.com when looking for HT's www.hometronics.com site. Accordingly, while the Court will enjoin Defendants from operating a website using a domain name intended to, or having the effect of, diverting traffic from HT's website, it will not enjoin Defendants from operating the website www.theelectronicarchitects.com.

### III.  ORDER

For the reasons discussed above, the motion is GRANTED IN PART.  HT shall recover (1) damages in the amount of $573,750.00; (2) pre- and post-judgment interest; and (3) attorneys' fees and costs in the amount of $28,285.85.  The Court also will enjoin Defendants from using any and all proprietary materials created or used by HT, and from imitating, copying, using, reproducing the "HomeTronics" Mark or any Mark that imitates or is confusingly similar to the "HomeTronics" Mark.  Finally, the Court will order Defendants to destroy or otherwise dispose of all materials found to have been made or used in violation of HT's exclusive copyright and trademark rights; and will enjoin Defendants from operating a website using a domain name intended to, or having the effect of, diverting traffic from HT's website.

**IT IS SO ORDERED.**

DATED: 3/3/2009

_____
JEREMY FOGEL
United States District Judge

1
2  This Order was served on the following persons:
3  Imran Vakil      imran@hankinpatentlaw.com
4  Lawrence Griffith Townsend     ltownsend@owe.com
5  Marc E. Hankin     Marc@HankinPatentLaw.com
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Case No. CV 08-01751 JF (HRL)
ORDER GRANTING IN PART MOTION FOR DEFAULT JUDGMENT
(JFEX1)